IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CAROLYN A. PABÓN,

Plaintiff,

v.

THOMAS J. VILSACK,
Secretary of the Department of Agriculture,

Defendant.

CIVIL NO.: 13-1147 (MEL)

**OPINION AND ORDER**

**I.    PROCEDURAL HISTORY**

On February 19, 2013 plaintiff Carolyn A. Pabón ("plaintiff") filed a complaint alleging "sex discrimination and reprisal" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"). ECF No. 1. She alleges that she occupied the position of Supervisory Interpretive Services Specialist at the United States Department of Agriculture Forest Service (the "USDAFS" or the "Agency") on a temporary basis for "more than 2 years," but was not selected for the position once a vacancy arose. Id. ¶¶ 6-8. Additionally, she makes a series of other allegations about her employment at the USDAFS, including that: her supervisor Pablo Cruz ("Cruz") made comments to her about working on her résumé, that Cruz exhibited favoritism when sending her male coworkers on "trainings and assignments," that Cruz stripped her of her "supervisory" duties and told her she should "sit quietly in a corner," and that her coworker Pedro Ríos ("Ríos"), a Supervisory Biological Scientist at the USDAFS, wanted to discuss her performance and questioned her attendance.[1] On December 5, 2014, the Secretary of

---

[1] Due to the manner in which the complaint is drafted, it is ambiguous as to whether she is claiming that these occurrences were motivated by her gender or were due to retaliation for protected activity, or both.  It is also

the United States Department of Agriculture (the "Secretary" or "defendant") moved for summary judgment, arguing that she could not prevail on a gender discrimination or retaliation claim related to the non-selection, and that the remainder of her allegations were not adverse employment actions and thus not actionable claims of discrimination or retaliation under Title VII. ECF No. 56; 57; 58. Plaintiff filed a response in opposition on December 22, 2014. ECF Nos. 59; 60; 61. For the foregoing reasons, defendant's motion for summary judgment is granted.

## II.   UNCONTESTED FACTS

Plaintiff held the position of Environmental Engineer at the Agency from December 6, 2001 through January 31, 2010. ECF No. 57, ¶ 1; 61, ¶ 1. She received a temporary promotion as a GS-13 Business Performance Manager from January 31, 2010 through May 9, 2010. Id. At an unspecified period in time, plaintiff was "detailed" on a temporary basis as a Supervisory Interpretive Services Specialist at the Agency.[2] ECF No. 61, at 2, ¶ 1.

Also at an unspecified point in time, plaintiff applied for the GS-13 position of Supervisory Interpretive Services Specialist at the USDAFS, under vacancy announcement 11-110816-0273 FS.[3] ECF Nos. 57, ¶ 7; 61, at 1. Plaintiff was included in the referral list and in the "qualifying group" as an eligible candidate. ECF Nos. 57, ¶ 8; 61, at 1. On October 24, 2011 plaintiff learned that she was not selected for the position. ECF Nos. 57, ¶ 7; 61, at 1.

---

somewhat unclear from the complaint whether she is pursuing a theory that she experienced a hostile work environment based on these events in the aggregate or whether each one of these allegations constitutes an adverse employment action. Ultimately, these distinctions do not alter the conclusion drawn in this opinion.

[2] Neither the complaint (ECF No. 1), nor the facts proposed by the parties (ECF Nos. 57; 61) include the dates during which plaintiff was temporarily employed as a Supervisory Interpretive Services Specialist at the USDAFS. The complaint avers that plaintiff occupied the Supervisory Interpretive Services Specialist position "on a temporary basis for more than 2 years"; however, defendant denied said allegation in its answer. ECF No. 1, ¶ 8; No. 9, ¶ 8.

[3] Neither the complaint (ECF No. 1), nor the facts proposed by the parties (ECF Nos. 57; 61) include the date that plaintiff applied for the Supervisory Interpretive Services Specialist position.

On the same day that she learned that she was not selected, plaintiff contacted an Equal Employment Opportunity ("EEO") counselor for the first time. ECF Nos. 57, at 3, 57-2, at 2. Subsequently, plaintiff had an interview with the Agency's EEO counselor on November 2, 2011. ECF No. 1, ¶ 10; ECF No. 9 ¶ 10. Eventually, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on January 18, 2012. ECF Nos. 57, at 3, 57-2, at 2.

From December 6, 2001 to present plaintiff has not been without a position at the USDAFS.[4] ECF Nos. 57, ¶ 12; 61, at 1. From January 2, 2011 to the present she has been employed as GS-12 Engineer. ECF Nos. 57, ¶ 2; 61, at 1. On February 26, 2013, plaintiff was reassigned from her GS-12 position at El Yunque National Forest in Río Grande, Puerto Rico to a lateral position GS-12 position in San Juan, Puerto Rico, with the same grade and pay as her prior position.[5] ECF Nos. 57, ¶¶ 5, 11; 61, at 1. Plaintiff has never been the subject of a disciplinary action or suspension at the USDAFS. ECF Nos. 57, ¶ 15; 61, at 1. She has received awards at USDAFS during her time as an employee there. ECF Nos. 57, ¶ 16; 61, at 1.

## III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ.

---

[4] While it is uncontested that she was never without a position at the USDAFS during the period relevant to the allegations in the complaint, it is unclear from the proposed uncontested facts what position plaintiff held from May 10, 2010 through January 1, 2011.

[5] Plaintiff proposes additional uncontested facts, which have been deemed admitted pursuant to Local Rule 56(d)-(e), as they are supported by the record and defendant has not filed a response to them. ECF No. 61, at 2-3. These proposed facts are supported by plaintiff's own unsworn statement under penalty of perjury dated "December __, 2014," (ECF No. 61-1), which does not provide an indication of when the events in question took place, as it contains no dates or timeframes. A review of the allegations in the complaint (ECF No. 1) does not shed light on when the events that are discussed in the unsworn statement took place in relation to the other uncontested facts in this case, which have been included in prose form above. Although plaintiff's proposed facts have been taken as true for purposes of evaluating defendant's motion for summary judgment, they have been omitted from this section and incorporated into the analysis section of this opinion.

Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in

the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

IV.   **ANALYSIS**

   **A.  Failure to Promote**

      **i.  Gender Discrimination**

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may rely on direct or circumstantial evidence in making a claim or employment discrimination. See Hidalgo v. Overseas Condado, 120 F.3d 328, 332-22 (1st Cir. 1997). The trial court must evaluate the evidence presented as a whole in order to determine if such evidence is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a discriminatory animus based on membership in a protected class. See Hidalgo, 120 F.3d at 335 (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993)).

While the burden of persuasion remains at all times with plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-

discriminatory reason for the adverse employment action. Id. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Id. (citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). If the employer meets this limited burden, the presumption created by the *prima facie* case disappears and the plaintiff must adduce sufficient evidence that gender was a motivating factor in the challenged employment action." Zapata-Matos v. Reckitt & Coleman, Inc., 277 F.3d 40, 45 (1st Cir. 2002). To do so, plaintiff must show that the employer's reason is pretextual, thus allowing the factfinder to infer "discriminatory animus" behind the challenged employment action. González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's'" discriminatory animus. Mesnick, 950 F.2d at 824 (quoting Medina-Muñoz, 896 F.2d at 9). "Evidence that makes out a *prima facie* case together with evidence of pretext can suffice to defeat summary judgment 'provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'" Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 n. 5 (1st Cir. 2000) (quoting Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 n. 5 (1st Cir. 1999)).

"The elements of a *prima facie* case depend upon the particular type of employment decision at issue." Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) (citing Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994)). The elements of a Title VII *prima facie* case for

failure to promote or failure to hire, as most-recently articulated by the First Circuit Court of Appeals, are: "(i) that the plaintiffs are members of a protected class; (ii) that they were qualified for the position to which they aspired; (iii) that they were not hired; and (iv) that a person possessing similar or inferior qualifications was hired." Id. (citing Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 478 (1st Cir. 2007); Keyes v. Sec'y of Navy, 853 F.2d 1016, 1023 (1st Cir. 1988)); Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see also Casamento v. Massachusetts Bay Transp. Authority, 559 F.Supp.2d 110, 115 (D. Mass. 2008). Establishing a *prima facie* case gives rise to an inference of discrimination. Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

Plaintiff has satisfied the first, second, and third prongs of a *prima facie* case of gender discrimination with regard to her non-selection for the Supervisory Interpretive Services Specialist vacancy. She is a woman, she applied for the position via the vacancy announcement, and she was not chosen for the position. With regard to her qualifications for the position, plaintiff was placed on a list of qualified candidates for the vacancy and had performed the duties of the position on a temporary basis.

As to the fourth prong of a *prima facie* case of gender discrimination with regard to non-selection, plaintiff has not cited to evidence in the record regarding her credentials for the position vis-à-vis those of the candidate chosen. Although the summary judgment record is clear that she was placed on a list of qualified candidates and was temporarily employed in the Supervisory Interpretive Services Specialist role, this evidence has no bearing on the strength of plaintiff's qualifications relative to those of the applicant chosen. If such evidence were in fact sufficient to meet the fourth prong of plaintiff's *prima facie* case, it would render the fourth

prong of the standard redundant, as the second prong queries whether the employee is qualified. Instead, the fourth element compares such qualifications to those of the prevailing candidates, inquiring whether the plaintiff's qualifications were similar or superior to those of the selectee. Because plaintiff has not brought forth evidence in the summary judgment record with specific citations to the record that would allow a fact-finder to conclude that she possessed similar or superior credentials to a chosen candidate, she has not satisfied the fourth prong of her *prima facie* case. Thus, plaintiff has failed to meet the *prima facie* standard for her non-selection, gender discrimination claim.

Although defendant's proffered explanation for not selecting plaintiff is moot in this case because of the defect in plaintiff's *prima facie* case, there is a procedural defect in defendant's assertion of a legitimate, non-discriminatory reason for failing to offer her the Supervisory Interpretive Services Specialist position. Defendant asserts that the reason she was not hired "was that the applicant selected . . . had obtained higher scores from the ranking panel." Id. Additionally, defendant argues that plaintiff was ranked fourth among the qualified candidates for the position by the "ranking panel" and the names of the top three candidates were sent to the selecting official. ECF Nos. 57-1, at 5; 58, at 8. While defendant clearly raises this argument in its memorandum in support of summary judgment (see ECF No. 58, at 8), it has not properly proposed or supported this reason with specific citations to the summary judgment record in its statement of proposed uncontested facts. See ECF No. 57. Local Rule 56 requires that "[a] motion for summary judgment . . . be supported by a separate, short, and concise statement of material facts . . . as to which the moving party contends there is no genuine issue of material fact to be tried . . . .," and requires a specific citation in the statement of proposed uncontested

facts to record material in support of the proposed fact. Local Rule 56(b), (e).

If defendant had properly supported a proposed fact in compliance with Local Rule 56 indicating that plaintiff was not selected because she was ranked fourth among the qualified applicants by the ranking panel and thus her name was not sent to the selecting official, that plaintiff's failure to hire, gender discrimination claim would fail at the pretext stage, as well. The only gender-related evidence to which plaintiff has cited is that at some point in time her supervisor, Cruz, sent plaintiff's male coworkers to "training and assignments," and that at some point in time plaintiff complained to Cruz that he had exhibited favoritism toward the male staff. In the absence of dates or a general timeframe during which these events took place, it is speculative that they occurred prior to her non-selection for the Supervisory Interpretive Services Specialist job. Additionally, she has not provided citations to any evidence in the record regarding the content of the training and assignments to which she refers, such that a reasonable jury could conclude that such experience would have made her a more competitive candidate for the Supervisory Interpretive Services Specialist position. Furthermore, the mere fact that she complained in a conclusory fashion to Cruz that, in her opinion, he exhibited favoritism towards her male counterparts would not enable a rational jury to conclude—in the absence of specifics—that he did in fact exhibit such favoritism. Finally, plaintiff has not cited to any evidence regarding Cruz's involvement in the selection process, such that a reasonable jury could find a connection between his purported male-favoritism and the decision not to award her the job.[6] Because defendant has not properly cited to the evidence in the record that supports its

---

[6] The complaint contains the allegation that "[p]laintiff learned that the Review Team named by Pablo Cruz was composed of subordinates at the Agency. These subordinates were Pablo Cruz's secretary, a forester and the marketing development specialist. They all acknowledged receiving written guidelines from Mr. Cruz. They also

proposed reason for not selecting plaintiff for the Supervisory Interpretive Services Specialist position in compliance with Local Rule 56, however, the conclusions drawn in this opinion and order do not rely on said reason.

Even disregarding the reason that defendant has given for not selecting plaintiff, her claim for non-selection due to her gender cannot survive summary judgment. Despite the procedural flaw in meeting its burden of production, defendant has presented evidence, supported by a citation within its proposed uncontested facts, which suggests that the hiring decision at issue was not gender-related: the individual who was offered the position in question was female.[7] ECF No. 57-6, at 2:12-18. Regardless of whether or not the McDonnell-Douglas burden-shifting framework is employed, the ultimate burden of proof in a Title VII gender-discrimination remains with the plaintiff at all times. See Burdine, 450 U.S. at 253. Although the manner in which defendant has proffered a legitimate non-discriminatory reason suffers from a procedural flaw in this case, in light of defendant's unrebutted evidence that a woman was selected for the position in favor of plaintiff, who is female, there is no genuine issue of material fact regarding whether plaintiff's non-selection for the Supervisory Interpretive Services Specialist job on October 24, 2011 was motivated by her female gender. See McNamee v. Starbucks Coffee Co., 914 F.Supp.2d 408, 419 (W.D.N.Y. 2012) (holding that gender discrimination claim for non-selection could not prevail because the plaintiff could not "show

---

recognized that Cruz submitted the name of the selectee only for approval at a higher level." ECF No. 1, ¶ 11. However, neither party has provided specific citations to evidence in the summary judgment record in support of any of these contentions.

[7] The selectee initially accepted the position, but ultimately declined the offer a few days later "for family reasons." ECF No. 57-6, at 2:12-18. Defendant claims that the second selectee for the position was also female, but has not cited to evidence in the summary judgment record in support of this contention. See ECF No. 57, n.1; ECF No. 58, at 8.

that such decision was discriminatory on the basis of gender, since a female was hired.").[8]
Viewing the evidence in the summary judgment record that has been brought to the court's
attention in the light most favorable to plaintiff, her claim that she was not selected for the
position in question due to her gender is simply not viable. Therefore, even assuming for
argument's sake that plaintiff did establish a *prima facie* case, her gender discrimination, non-
selection claim does not survive summary judgment because a reasonable jury could not
conclude that her non-selection was gender-related, notwithstanding that another female was
selected in favor of her. Accordingly, defendant's motion for summary judgment is granted as to
this claim.

### ii. Retaliation

The ADEA makes it unlawful for an employer to discriminate against any of its
employees because they have made a charge, testified, assisted, or participated in any manner in
an investigation, proceeding, or hearing related to activity protected by the statutes. 29 U.S.C.
§ 623(d). With regard to causation, "a plaintiff making a retaliation claim . . . must establish that
his or her protected activity was a but-for cause of the alleged adverse action by the employer."
Univ.of Tex. Sw. Med. Center v. Nassar, — U.S. —, 133 S.Ct. 2517, 2520, 2534 (2013); see also
Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, n. 1 (1st Cir. 2013) ("[T]he Supreme Court
has required 'but-for' causation under the . . . anti-retaliation provision of Title VII of the Civil

---

[8] A female plaintiff can prevail in a claim of discharge due to discrimination when the employer replaces the
discharged employee with another female. See e.g., Cumpiano v. Banco Santander P.R., 902 F.2d 148, 155 (1st Cir.
1990); see also Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353-53 (3d. Cir. 1990)). Unlike in the discharge
context, however, when another female is chosen in the context of a non-selection claim, at the moment the
allegedly discriminatory decision is made the decision-maker is selecting someone within the same protected class
as the plaintiff. In claims of discriminatory discharge, the employer does not necessarily have a replacement in mind
at the moment of the discharge and is not necessarily aware of the other candidates that will be available to fill the
relevant position.

Rights Act of 1964, rejecting the 'motivating factor' test applied by the lower court in that case."). To prove a claim of retaliation a plaintiff must establish: (1) plaintiff's protected participation or opposition; (2) a materially-adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) the adverse action taken was causally linked to the plaintiff's protected activity. Mariani–Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007).

Defendant asserts that plaintiff cannot show that there is a causal connection between her protected activity and the decision not to award her the Supervisory Interpretive Services Specialist position because she first filed a complaint with the EEOC on January 18, 2012—that is, after she was denied the position, which occurred on October 24, 2011. ECF No. 58, at 10. With regard to the decision not to award her the position on October 24, 2011, plaintiff does not contest defendant's argument that the sequence of the relevant events precludes a finding of causation.[9] Although there is evidence that she first contacted an EEO counselor on the same day

---

[9] In plaintiff's memorandum in opposition to summary judgment she states that "the decision to re-advertised [*sic*] the position, for which duties Pabón had been performing for over two years, was done after she began an EEO proceeding." ECF No. 60. However, the complaint does not mention that there was a second application process for the Supervisory Interpretive Services Specialist position, let alone the date on which she was purportedly not selected for a second time. See ECF No. 1. Her allegation in this case related to her non-selection states that "[e]ven though[] plaintiff had occupied the position without compensation on a temporary basis for more than 2 years, *on October 24, 2011* she learned she was not selected." Id. at ¶ 8 (emphasis added). Similarly, the EEOC considered the issue of whether she was subjected to gender discrimination or reprisal when "*[o]n October 24, 2011*, she learned that she was not selected for the GS-13 Supervisory Interpretive Services Specialist position . . . advertised via Vacancy Announcement 11-110816-02073FS-CD . . . ." ECF No. 57-2, at 1 (emphasis added). There is no indication from the summary judgment record that either plaintiff's EEOC complaint was amended to include allegations regarding her non-selection for the job based on a second application process. Additionally, as plaintiff explicitly admitted in her deposition, she did not amend the complaint in the instant case to include allegations regarding the re-advertisement of the position, after October 24, 2011. ECF No. 57-6, at 3:7-11. Because the complaint does not contain any allegations that plaintiff was rejected for the Supervisory Interpretive Services Specialist position for a second time, after October 24, 2011, and no leave was sought to amend the complaint to include the same, plaintiff is precluded from pursuing such a claim in this case.

that she learned that she was denied the position, October 24, 2011, plaintiff does not argue that her non-selection was related to her protected activity on that date. Moreover, even assuming that she engaged in protected activity on October 24, 2011 prior to learning of her non-selection, she has not cited to evidence in the record that suggests that any supervisor or decision-maker at the USDAFS knew of her activity prior to reaching the decision not to select her. Indeed, no reasonable jury could reach that conclusion, as the issue she raised to the EEO counselor on October 24, 2011 was that she was not selected for the Supervisory Interpretive Services Specialist position that day. See ECF Nos. 57-1-2, at 1; 57-2, at 1-2. Thus, because she has not established a *prima facie* case of retaliation for prior protected activity with respect to her non-selection for the Supervisory Interpretive Services Specialist on October 24, 2011, defendant's summary judgment is granted with regard to her Title VII reprisal claim for such non-selection.

### B.  Other "Adverse Employment Actions"

In addition to arguing that no rational jury could find for plaintiff with respect to her claim that she was not selected for the Supervisory Interpretive Services Specialist position due to her gender or her prior EEO activity, defendant argues that the remainder of plaintiff's allegations do not rise to the level of materially adverse employment actions for purposes of Title VII. ECF No. 58, at 11. To this effect, defendant states: that "[g]eneral allegations about being told to work on her resume, about a team leader hovering over and alleged attempts to discuss performance, and that attendance was subjected to heightened scrutiny do not constitute an adverse action." Id. at 13. The Secretary continues: "Plaintiff did not suffer a tangible adverse employment action at the hand of Defendant. Her employment status has not changed. Ms. Pabón has suffered no damages." Id. at 11. In making the argument that aside from her non-

selection plaintiff's allegations are not viable adverse employment actions, however, the Secretary fails to mention several of plaintiff's other allegations, including that Cruz sent her male coworkers to "trainings and assignments," that he removed plaintiff from her the duties associated with the temporary Supervisory Interpretive Services Specialist position, "told [her] that [she] should just sit quietly in a corner," ignored her, and "excluded [her] from leadership meetings and meeting related to the unit [she] was working on." ECF No. 61-1, ¶¶ 7-8, 10.

"In order to present a legally viable claim of employment discrimination under [Title VII], a plaintiff must show, among other things, that he suffered an 'adverse employment action' on account of a protected ground." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010). Similarly, in order to prevail on a claim of Title VII workplace retaliation, a plaintiff must prove that he suffered an "adverse employment action" because of a protected activity. Id. (citing DeClaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)). "An adverse employment action typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) (citations and internal quotation marks omitted). To constitute an adverse employment action, the event in question must materially change the conditions of a plaintiff's employment. Id.; see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (for purposes a of a Title VII retaliation claim "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citations and internal quotation marks omitted).

### i. Cruz's Comments

Cruz's comments that plaintiff should start looking for other jobs and "needed to start putting [her] eggs in more than one basket" do not constitute adverse employment actions. "Ordinarily, reprimands by management or supervisors do not constitute materially adverse employment actions if they do not carry with them 'any tangible consequences.'" DaCosta v. Town of Plymouth, No. CIV.A. 11-12133-MBB, 2014 WL 2998986, at *20 (D. Mass. July 1, 2014) (citing Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011)); see also Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 399 (D.P.R. 2007) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.") (quoting Teachout v. New York City Dept. of Educ., No. 04-945, 2006 WL 452022, at *13 (S.D.N.Y. Feb.22, 2006)) (internal quotation marks omitted). Plaintiff asserts that Cruz commented that she should begin looking for other jobs and needed to start putting her eggs in more than one basket in response to her request for compensation associated with her "temporary promotion."[10] She has not adduced evidence, however, that these comments were materially adverse. Accordingly, Cruz's standalone comments are not adverse employment actions for purposes of a Title VII gender discrimination

---

[10] Plaintiff's assertion in her unsworn statement under penalty of perjury that Cruz told her to remain in the temporary Supervisory Interpretive Services Specialist position "without compensation," is juxtaposed immediately prior to her statement that "[t]he position was a grade higher than [her] own and [she] had to perform the duties without the corresponding compensation." Based on this juxtaposition, it appears that plaintiff intends to convey that she did not receive additional compensation beyond that associated with her GS-12 position for temporarily performing the duties of a GS-13 position—not that Cruz told her to work as a Supervisory Interpretive Services Specialist without any pay whatsoever. The mere fact that Cruz told her to remain in the temporary Supervisory Services Specialist position "without compensation," does not evince that she was in fact materially harmed by way of deprivation of the benefits to which she was entitled, which would be necessary to support a finding that it was an adverse employment action. Regardless of what plaintiff intended by these two statements in her unsworn statement and whether she contends that having to work two positions for the salary of one of them constitutes an actionable claim, however, she did not present an issue regarding her compensation before the EEOC (See ECF Nos. 57-1, 57-2), and thus may not pursue such a claim as a discrete adverse employment action before this court as she has not exhausted her corresponding administrative remedies.

or retaliation claim.

### ii. Ríos's Increased Scrutiny

"[P]lacing an employee under stricter supervisor—in and of itself—does not qualify as a materially adverse employment action." Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 314 (D.P.R. 2010) (citing Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002); Lucenti v. Potter, 432 F.Supp. 2d 347, 364 (S.D.N.Y. 2006); Castro v. New York City Bd. of Educ. Personnel Dir., 1998 WL 108004, *7 (S.D.N.Y. Mar. 11, 1998)); see also Slater v. Town of Exeter, No. CIV 07-407-JL, 2009 WL 737112, at *10 (D.N.H. Mar. 20, 2009) ("[H]eightened scrutiny is not itself an adverse employment action sufficient to show retaliation."). As with respect to her allegations regarding Cruz's comments, plaintiff has not argued or presented evidence to suggest that Ríos's desire to discuss her job performance and attendance record led to any form of concrete disciplinary action that materially altered the terms or conditions of her employment or had any material impact on her. Thus, because increased scrutiny does not rise to the level of an adverse employment action in and of itself, plaintiff may not prevail on a gender discrimination or retaliation claim with regard to that allegation.

### iii. Denial of Training Opportunities

Under Title VII, "the denial of professional training opportunities may constitute an adverse employment action, but only where an employee can show 'material harm' from the denial, 'such as a failure to promote or a loss of career advancement opportunities.'" Trachtenberg v. Dep't of Educ. of City of New York, 937 F.Supp.2d 460, 468 (S.D.N.Y. 2013); Casey v. Mabus, 878 F. Supp. 2d 175, 184 (D.D.C. 2012); see also Colon-Fontánez v. Municipality of San Juan, 671 F. Supp. 2d 300, 333 (D.P.R. 2009) aff'd, 660 F.3d 17 (1st Cir.

2011) (noting that even if the employer had intentionally prevented the employee's participation in a training workshop such conduct would not classify as an adverse employment action under Title VII). In the instant case, plaintiff has not shown that she experienced material harm based on her contention that Cruz sent her male co-workers on unidentified trainings and assignments, or that the decisions would have a materially adverse effect on a reasonable employee in her position. It is ambiguous whether these trainings and assignments were related to the duties of either her temporary or permanent position at the USDAFS, when these trainings and assignments took place, whether there was an application process for any of the trainings and assignments, whether any female coworkers participated in similar "trainings and assignments," and whether plaintiff expressed an interest in participating in the trainings or performing the assignments in question. However, even if plaintiff had presented evidence to fill these gaps in the record regarding her "trainings and assignments" allegation, she would still need to evince how the failure to afford her these opportunities materially impacted her employment and would have dissuaded a reasonable employee from engaging in protected activity under Title VII. She does not argue that a lack of trainings or assignments contributed to her rejection for the Supervisory Interpretive Services Specialist position, to the deprivation her temporary duties in that position, or in getting negative evaluations in her permanent, GS-12 position, and a rational jury would need to speculate to find that such a causal link existed. Because plaintiff has not cited to evidence in the record that suggests that the decision to send her male coworkers on unidentified "trainings and assignments" had a materially adverse effect on her, she may not prevail on a claim that the denial of the same was an adverse employment action for purposes of Title VII gender discrimination or retaliation.

17

### iv. Deprivation of Duties

With regard to the deprivation of duties allegation, the fact that the duties of which Cruz purportedly stripped plaintiff were associated with her temporary detail as a Supervisory Interpretive Services Specialist, rather than her permanent position as a GS-12 Engineer with the USDAFS, is not necessarily fatal to her claim that same constitutes an adverse employment action. As explained by the Tenth Circuit Court of Appeals (the "Tenth Circuit") in Stinnett v. Safeway, Inc., if "there is evidence that the reassignment resulted in a *de facto* reduction in responsibility and required a lesser degree of skill," a reassignment from a temporary project or position to a permanent one can constitute an adverse employment action. 337 F.3d 1213, 1217; see also Mansfield v. Billington, 574 F. Supp. 2d 69, 85 (D.D.C. 2008) (finding that when the plaintiff was removed from temporary position and reassigned to her permanent position she experienced a "diminution in responsibilities," where the plaintiff had demonstrated that she lost many of her specific supervisory responsibilities); but see Riggsbee v. Diversity Servs., Inc., 637 F. Supp. 2d 39, 45 (D.D.C. 2009) ("It is also questionable whether the early termination of a temporary position is an adverse employment action, although the Court will assume without deciding that it is."). This can be true even if the employee maintains her "wage level, seniority, and title" associated with the permanent position throughout the relevant period, including during the temporary assignment. Id. The Tenth Circuit explained that while "an employer always retains the right to reassign a temporarily assigned employee to a permanent position," the employer "may not exercise the right of reassignment in a discriminatory manner." Id.

Plaintiff's only evidence that she has brought to the court's attention with specific citations to the record in support of her deprivation of duties allegation is her unsworn statement

under penalty of perjury, in which she asserts that Cruz removed her from the duties of the Supervisory Interpretive Services Specialist position and that after changing her duties, Cruz told plaintiff "that she should just sit quietly in a corner." As with any claim that a reduction in responsibilities or reassignment constitutes an adverse employment action, in order to establish a *prima facie* case, the plaintiff must present sufficient evidence from which a rationale jury can conclude that a significant change in duties occurred, such that the plaintiff's employment was materially impacted. See e.g., Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 42 (1st Cir. 2011) (finding that alleged elimination of plaintiff's "supervisory duties" did not constitute a materially adverse employment action where the plaintiff did not proffer facts demonstrating how the reassignment in question "significantly altered her alleged prior authority"); Cora-Reyes v. P.R. Aqueduct and Sewer Authority, Civ. No. 08-1239 (CVR), 2010 WL 2670872, at *10 (D.P.R. July 1, 2010) (noting that although "the evidence showed" that the plaintiff's supervisor did not assign work to the plaintiff for a limited period of time "no evidence was presented that the reduction of duties was so severe to affect his conditions of employment which may be considered an adverse employment action."); see also Alvarado González v. Fuller Group P.R., Inc., No. Civ. 04-1376 (JAF), 2005 WL 2138797, at *9 (D.P.R. Sept. 2, 2005) ("We find that Plaintiff does not adequately demonstrate that she was subjected to an adverse employment action by being reassigned to the night shift . . . ."). It remains uncertain from the evidence that has been brought to the attention of the court with specific citations to the summary judgment record what the responsibilities and duties associated with the Supervisory Interpretive Services position were, what responsibilities and duties were associated with her permanent position, and which duties or responsibilities in particular were impacted by Cruz's actions. Not only has

plaintiff not cited to evidence of the job descriptions associated with either of the two positions, she has not provided any description whatsoever of the scope of the duties she performed in her temporary role or of those associated with her permanent job. In contrast to a substantial change in duties, a change in responsibilities that impacted only *de minimus* aspects of a plaintiff's employment would not be actionable under Title VII. <u>Irizarry-Santiago v. Essilor Indus.</u>, 982 F. Supp. 2d 131, 136 (D.P.R. 2013) ("[F]ederal courts repeatedly hold that an adverse employment action must affect more than *de minimus* aspects of an employee's work . . . .") (citing <u>Cham v. Station Operators, Inc.</u>, 685 F.3d 87, 94 (1st Cir. 2012)). Although it is clear from the contentions in plaintiff's unsworn statement under penalty of perjury that, in her opinion, Cruz altered her duties at the USDAFS, she has not proffered facts that could enable a jury to make a determination about how significant or minimal the change in her duties and responsibilities was, in order to conclude that the reassignment was in fact a materially adverse employment action.

   Although plaintiff has provided evidence that Cruz instructed her to sit in a corner after he changed her duties, based on the record it is speculative whether she actually remained without duties at any point in her employment with the USDAFS. While the evidence is sufficient for a jury to conclude that Cruz gave the instruction in question, the record is silent as to whether the comment had a material impact on her employment, as she has not proffered evidence as to whether she was left without an assignment or responsibilities at the Agency. The unsworn statement on which she bases her claim that he told her to sit quietly in a corner after changing her duties lacks relevant context surrounding this instruction. In the absence of pertinent details regarding the circumstances in question it is unclear whether he instructed her to sit quietly for a brief duration or for an indefinite amount of time. While it could constitute an

adverse employment action for a supervisor to significantly reduce an employee's responsibilities and instruct her to remain idle for an extended or indefinite period, based on the evidence that plaintiff has brought to the court's attention it is equally possible that the change in her role at the USDAFS was minimal and by making the instruction in question, Cruz meant for her to sit for a brief period while he obtained a new assignment for her. The jury would need to speculate to conclude that the change in her duties was considerable or that she remained idle— without duties associated with her temporary or permanent position—at any point in time, and if so, for how long. Overall, plaintiff's contention that Cruz stripped her of the duties associated with the Supervisory Interpretive Services Specialist position that she had been performing on a temporary basis is vague and conclusory. Indulging all logical inferences in her favor, a reasonable jury could not reach a conclusion that subsequent to the change in her role she was left with significantly different responsibilities, as required for her reassignment to constitute a materially adverse employment action for purposes of a Title VII discrimination or retaliation claim.

### v.  Lack of Communication and Exclusion from Meetings

Plaintiff's final assertion in her unsworn statement is that Cruz "ceased all communication with [her], [and] excluded her from leadership meetings and meetings related to the unit [she] was working on." ECF No. 61-1, ¶ 10. As to the allegation that her supervisor ignored her, the same is not sufficient to constitute an adverse employment action alone. See e.g., Munday v. Waste Mgt. of N.A., Inc., 126 F.3d 239 (4th Cir. 1997) (holding that evidence that employee was ignored by coworkers and top management was insufficient to establish an adverse employment action); Burlington N., 548 U.S. at 68 (indicating that general antipathy and

"snubbing" by supervisors and coworkers does not constitute an adverse employment action for purposes of a Title VII retaliation claim).

While broad allegations that a supervisor ignored an employee do not meet the adverse employment action standard, exclusion from meetings may qualify as an adverse employment action, depending on the circumstances and the employee's position and role within a company or organization. See e.g., Irizarry-Santiago v. Essilor Indus., 982 F. Supp. 2d 131, 135-36 (D.P.R. 2013) ("Plaintiff's allegation that defendants excluded her—Essilor's Vice President of Finance and Administrative Manager—from important company processes and meetings regarding financial matters would certainly qualify as an adverse employment action.") (citing Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002)); but see Montalvo Ríos v. Municipality of Guaynabo, No. CIV. 10-1293 (SEC), 2011 WL 1258618, at *5 (D.P.R. Mar. 24, 2011) ("For purposes of a Title VII retaliation claim, menacing looks, name calling, exclusion from meetings, or being shunned by co-workers does not constitute an adverse employment action.") (citing Davis v. Verizon Wireless, 389 F.Supp.2d 458 (W.D.N.Y.2005)). It is clear, however, that exclusion from meetings does not automatically constitute an adverse employment action, absent evidence from which a rational factfinder could determine that the exclusion was materially adverse. In Gu, the First Circuit Court of Appeals stated:

> [P]laintiffs make bald assertions that they were excluded from important meetings and experienced diminished communication regarding office matters, but they were unable to name a particular meeting or important decision from which they were excluded. Such unsupported assertions are insufficient evidence of a material change in working conditions.

Gu, 312 F.3d at 15. In comparison to assertions in Gu, that the plaintiffs were excluded from "important meetings," plaintiff's contention regarding the meetings she was allegedly excluded

from is—arguably—slightly more specific: that Cruz excluded her from "leadership meetings and meetings related to the unit [she] was working on." ECF No. 61-1, at ¶ 10. Like in Gu, however, plaintiff's assertions are broad and vague, and do not permit a reasonable inference about the particular content of the meetings or whether or how said content related to plaintiff's role at the USDAFS. She has provided no evidence as to which employees did in fact attend "leadership meetings" or whether such meetings took place while she was temporarily employed as a Supervisory Interpretive Services Specialist or when she returned to her permanent role. With regard to the meetings "related to the unit [she] was working on," she has not cited to evidence indicating the particular "unit" to which she is referring, such that a jury might be able to evaluate how the exclusion from the meetings altered her working conditions. Overall, the evidence she has proffered related to her exclusion meetings provides no indication as to how exclusion said meetings affected the terms and conditions of her employment. As with regard to her averments about trainings and deprivation of duties, the evidence in support of her claim that she was excluded from meetings is simply too vague and conclusory to enable the finder of fact to conclude that she suffered a related materially adverse employment action.

### C.  Hostile Work Environment Claim

Although defendant is correct that individually none of plaintiff's allegations constitute a discrete adverse employment action, the Secretary has not argued that the cumulative effect of plaintiff' allegations or evidence about her work environment does not meet the standard for a hostile work environment claim. In plaintiff's response in opposition, she states that "[d]efendant created a demeaning and hostile work environment for [her] because she engaged in protected

EEO activity"[11] and that she has "alleged a continuous pattern of unequal treatment compared to her male counterparts." ECF No. 60, at 1, 3. Conceding that plaintiff does explicitly label her work environment as "hostile" in the complaint, the complaint does contain suggestions that she is pursuing a theory that she experienced a hostile work environment at the USDAFS, such as that she "felt *harassed* and persecuted" and that she "felt isolated and she seek [*sic*] psychiatric care to cope with the *work environment*." Id., ¶¶ 20, 27 (emphasis added).

Despite defendant's failure to explicitly address plaintiff's allegations regarding a hostile work environment claim in its request for entry of summary judgment as to all causes of action, to the extent that plaintiff intended to raise such a claim in the complaint, her allegations and the evidence she has offered in support of the same are too conclusory to amount to a triable issue of fact as to whether she experienced a hostile work environment. The elements of a hostile work environment claim include that: (1) the plaintiff is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of her employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that she did in fact perceive it to be so; and (6) some basis for employer liability has been established. Reyes Vega v. Pepsi Cola Puerto Rico Distribuing LLC, 371 F.Supp.2d 21, 27 (D.P.R. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728

---

[11] Although there is a split among the United States Circuit Courts of Appeals as to whether a hostile work environment can constitute a retaliatory adverse employment action, the Court of Appeals for the First Circuit has explicitly held that "workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of a *prima facie* case for Title VII retaliation cases." Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005).

(1st Cir. 2001)).

With regard to the fourth essential element of a hostile work environment claim—that harassment be severe or pervasive—plaintiff's claim suffers from many of the infirmities discussed above, when considering her assertions as potential discrete employment actions. Thus, the rationales for why such evidence is insufficient to demonstrate to a rational factfinder that the actions were materially adverse applies with equal force to whether such a finder of fact could reach a conclusion that the unwanted employment actions were severe. The unsworn statement that she has submitted to support her allegations of Ríos's increased scrutiny, the denial of training opportunities, the deprivation of her duties related to the Supervisory Interpretive Services Specialist position, and that Cruz ignored her and excluded her from meetings is largely conclusory and lacks crucial context surrounding the alleged occurrences.

When evaluating a hostile work environment claim, a distinction must be drawn between "commonplace indignities typical of the workplace . . . and severe or pervasive harassment . . . [and] [t]he thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). As previously discussed, it is not clear whether the content of the "trainings and assignment" and meetings she was excluded from related to her role at the USDAFS or of which duties and responsibilities Cruz deprived her. Without such pertinent background information, a finding that the events and decisions to which she refers altered the conditions of her employment and placed them in the category of actual harassment would be unfounded.

With respect to her claim that she was not awarded the corresponding compensation

increase for temporarily performing the duties of the Supervisory Interpretive Services Specialist position, she has not adduced sufficient evidence to demonstrate that the failure to award her additional compensation was so objectively offensive as to create an abusive work environment for her. For example, she has not cited to evidence in the summary judgment record to suggest that she was overburdened with the duties of two positions or any additional context that might permit a finding that the pay discrepancy amounted to unwelcome harassment, let alone severe harassment. Furthermore, in <u>Meritor Savings Bank v. Vinson</u>, the Supreme Court of the United States clarified that "hostile work environment claims provide a means of redress under Title VII for discrimination that does not take the more traditional form of a tangible or economic loss but rather for discrimination that contaminates the psychological aspects of the workplace to the degree that the conditions of the workplace are altered." <u>Parker v. State of Del., Dep't. of Pub. Safety</u>, 11 F.Supp.2d 467, 475 (D. Del. 1998) (citing <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 64-67 (1986)). Claims of disparate compensation or pay, without additional evidence that the discrepancy in compensation made the employee's work environment psychologically abusive, are "the kind of tangible or economic losses that the <u>Vinson</u> Court contrasted with a hostile environment."[12] <u>Id.</u>

Furthermore, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks omitted). While it is theoretically possible

---

[12] Additionally, as previously mentioned, she has not provided a citation to evidence of the dates on which she temporarily held this position, such that a finding could be made that the lack of compensation occurred after her protected conduct with the EEOC. Nor has she brought any evidence to the court's attention that the lack of "corresponding compensation" was gender-related, such as evidence that a male co-worker received a pay increase for a temporary promotion. Finally, the compensation discrepancy issue was not presented before the EEOC. ECF No. 57-1, at 1-2; 57-2, at 1-2.

that the heightened scrutiny, denial of training, deprivation of responsibilities and duties, and exclusion from meetings was both continuous and concerted, plaintiff has not provided any evidence of dates or timeframes that could support a finding of pervasiveness in this case. Cf. Rosario v. Dept. of Army, 607 F.3d 241, 247 (1st Cir. 2010) (finding sufficient evidence that employee was subjected to severe or pervasive harassment where "[t]he record contain[ed] evidence that, throughout a two-year period, [a co-worker] complained about [the plaintiff's] appearance on a daily basis, regularly drew the attention of her co-workers to her body and undergarments, shadowed her closely when she interacted with patients, challenged her decisions, mocked her when she spoke to him and, on occasion, described her as a street woman to other employees and criticized her to doctors and patients."); and Crowley v. L.L. Bean, Inc., 303 F.3d 387, 397-98 (1st Cir. 2002) (finding alleged repeated acts of harassment and stalking that spanned nearly one and a half years sufficiently severe or pervasive to constitute actionable harassment). As to Cruz's other comments, it is clear that they were the product of an isolated incident; according to plaintiff's unsworn statement, Cruz's instructions to remain in the temporary Supervisory Interpretive Services Specialist position without corresponding compensation for the "temporary promotion" and to start putting her eggs in more than one basket were an isolated response to her request for compensation for her temporary promotion. O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) ("'[O]ffhand comments, and isolated incidents are not sufficient to create actionable harassment; the hostile work environment standard must be kept 'sufficiently demanding to ensure that Title VII does not become a 'general civility code''") (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 782 (1998)).

27

Taking into account all of the evidence to which plaintiff has brought to the court's attention in support of her allegations in the summary judgment record, she could not fulfill her burden of showing that the objectionable conduct was severe or pervasive or that a reasonable person would find the conduct and decisions objectively resulted in a hostile or abusive work environment for her at the USDAFS. In sum, to establish a claim for hostile work environment, the plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Viewing plaintiff's allegations and the evidence she offers in support thereof simply would not enable a rational jury to find that she experienced a hostile work environment because of her gender or as reprisal for her protected conduct.

## V.    CONCLUSION

Based on the foregoing analysis, defendant's motion for summary judgment (ECF No. 56) is **GRANTED** and all claims contained within the complaint are dismissed with prejudice. With respect to plaintiff's gender and retaliation claims related to her non-selection for the Supervisory Interpretive Services Specialist position, she has not established a *prima facie* case of Title VII gender discrimination or reprisal. Assuming in the alternative that she did satisfy the *prima facie* threshold, her gender discrimination claim would still not be viable because a female was selected on October 24, 2011 in favor of plaintiff, and plaintiff has not brought evidence to the court's attention that would allow a reasonable jury to arrive at a conclusion that the decision not to hire her was motivated by gender. As to the remainder of her allegations, when viewed individually, plaintiff has not presented evidence from which a rational jury could conclude that

she suffered a materially adverse employment action. Proof of an adverse employment action is necessary for plaintiff to prevail on either a gender discrimination or retaliation claim; thus, summary judgment is granted to the extent that the complaint alleges these actions as discrete instances of discrimination or retaliation. Considering these same workplace-related allegations and the evidence that plaintiff has offered to support them in their totality, as a hostile work environment claim, plaintiff nevertheless cannot prevail in this case. No reasonable jury could find that she experienced harassment so pervasive or severe that it altered the conditions of her employment and created an abusive work environment or that a reasonable person would find such objectionable conduct hostile or abusive. Thus, to the extent that the complaint alleges a hostile work environment claim due to gender and / or reprisal, it is also dismissed with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 27th day of February, 2015.

s/Marcos E. López
U.S. Magistrate Judge